# APPENDIX

**List of Changes**

1.  The cover page was adjusted to note that Chief Judge Mark A. Barnett has been assigned to this case. The title of the pleading was also adjusted as were the page numbers indicating the presence of confidential information.

2.  Page 4, paragraph 14 was adjusted to include a reference to the administrative materials filed by Customs and Border Protection ("CBP") as it relates to the timeliness of this complaint.

3.  Page 8, paragraph 28 was adjusted by adding a period to the abbreviation for page.

4.  Page 16, paragraph 55 was adjusted to note that Ms. Heather Jacobson, Esq. filed the protest.

5.  Page 16, paragraph 56 was adjusted to clarify the manner in which Optima was notified on the initial rejection of its protest before consideration of that protest was suspended.

6.  Page 17, paragraph 57 was added to provide additional context about Ms. Jacobson's communications with CBP regarding the progression of the protest at issue. In addition, a reference to Exhibit 10 was added which includes the relevant email communication.

7.  Page 17, paragraph 58 was added to provide information regarding Ms. Jacobson's ongoing interactions with CBP on the status of the protest at issue.

8.  Page 17, paragraph 59 was renumbered to account for the above noted additions and edited slightly for clarity.

9.  Page 17, paragraph 60 was added to provide additional information regarding interactions with CBP flowing from the action on Optima's Void Denial Request. In addition, a reference to Exhibit 12 was added which includes the relevant email communication.

10. Page 18, paragraph 61 was added to provide additional information regarding the suspension of the protest at issue.

11. Page 18, paragraph 62 was renumbered to account for the above noted additions and edited slightly for clarity. Exhibit 14 was also added to clarify the progression of Optima's protest through ACE.

12. Page 18, paragraphs 63-65 were renumbered to account for the above noted additions.

13. Page 19, paragraphs 66-69 were renumbered to account for the above noted additions.

14. Page 20, the date on the filing was adjusted.

15. The Exhibit List was amended to include the above-noted additional exhibits.

16. Exhibits 10, 12, and 14 have been added.

## UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: The Honorable Chief Judge Mark A. Barnett

| | | |
|---|---|---|
| Optima Steel International LLC | ) | |
| Plaintiff | ) | Court No. 21-00062 |
| v. | ) | Confidential Information |
| United States, | ) | Included on Pages 1-3, 5, 6, 8-12, 14-16 and ~~10-17~~18 |
| Defendant. | ) | |

### FIRST AMENDED COMPLAINT

Plaintiff Optima Steel International LLC ("Optima"), by and through its counsel submit this First Amended Complaint as of right stating the following claims against Defendant United States:

### INTRODUCTION

1.     Optima is the plaintiff herein and the importer of record for all challenged import entries.

2.     All—100 percent—of Optima's hot-rolled steel imports consisted of hot-rolled steel produced by Tokyo Steel Manufacturing Co., Ltd. ("Tokyo Steel"), a Japanese hot-rolled steel producer.  Optima purchased the Tokyo Steel hot-rolled steel from [                              ], a Japanese trading company.

Confidential, Subject to Protective Order

3.      For all affected import transactions, Optima was the importer of record,

[        ] was the Japanese exporter, and Tokyo Steel was the Japanese hot-rolled steel

producer.

4.      At the time of import entry (during the time period of Mach 2016 –

September 2017), Optima paid an antidumping duty ("AD") cash deposit rate equal to

5.58%, which was the AD cash deposit rate applicable to Tokyo Steel at the time.

5.      In December 2017, the United States Commerce Department ("USDOC")

initiated an AD review of all sales and import entries of hot-rolled steel produced by

Tokyo Steel during the March 2016 – September 2017 time period.  The USDOC

completed its AD review in June 2019.  The USDOC's final AD review determination

established a new AD cash deposit rate for Tokyo Steel of 2.06% *ad valorem*.  The

USDOC's final AD review also set forth a single company-specific AD assessment rate

equal to [                           ], which was the per metric ton equivalent of 2.06% *ad*

*valorem* AD rate.

6.      In July 2019, USDOC notified the United States Customs and Border

Protection ("CBP") of the "importer-specific AD assessment rate" for the AD review of

Tokyo Steel.  Such notification was through non-public customs instructions that

instructed CBP to liquidate "[

                                                                                    ]" and

"[

Confidential, Subject to Protective Order

]"  The following paragraph assigned the rate of

[                    ] to the "[                                    ]."

7.      It is crystal clear from USDOC's own AD review documentation that the

customer name [            ] in USDOC's liquidation instructions came from the U.S.

sales database that Tokyo Steel had submitted to USDOC during the AD review.

8.      Notwithstanding that:

 (a)    100 percent of Optima's imports of hot-rolled steel during the March 2016
        – September 2017 time period consisted of hot-rolled steel produced by
        Tokyo Steel;

 (b)    100 percent of Optima's imports of Tokyo Steel produced hot-rolled steel
        during the March 2016-September 2017 time period were exported by
        [        ] to Optima; and

 (c)     USDOC explicitly instructed Customs that "*all*" shipments of certain hot-
        rolled steel produced by Tokyo Steel and sold to [        ] should be
        assessed AD liability of [                    ] (2.06% *ad valorem*) for
        imports of hot-rolled steel produced by Tokyo Steel

CBP incorrectly applied an AD assessment rate of 5.58% *ad valorem* to the Optima's

import entries.

9.      As a matter law and practice, such application of AD assessment rate is

wrong.  The affected entry transactions should have been liquidated at the final company-

specific AD rate of [                    ].

Confidential, Subject to Protective Order

## JURISDICTION AND STANDING

10.     This is a civil action challenging the denial of a protest under 19 U.S.C. § 1514.

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a) because this action arises from denied protest number 2704-20-112444.

12.     Optima has standing to bring this action pursuant to 28 U.S.C. § 2631 because it was the importer of record for the entries subject to the denied protest and caused the denied protest to be filed on its behalf.

13.     CBP is an agency of the United States.

14.      The entries that were the subject of protest number 2704-20-112444 and that are subject to this action are as follows:

300-8028669-2, 300-8028744-3, 300-4000499-5, 300-4000826-9, 300-4001057-0, 300-4001605-6, 3004424031-4, 300-4424237-7, and 300-4424487-8.

15.     Protest number 2704-20-112444 was timely filed within the meaning of 19 C.F.R. § 174.12(e).

16.     The instant action is timely filed within the meaning of 28 U.S.C. § 2632, 28 U.S.C. § 2636, and 19 C.F.R. § 174.31 based on CBP's October 16, 2020 denial of Optima's protest.  *See* Protests and Entries from the Port of Long Beach, CA at Attach 1, p. 1 (May 13, 2021), ECF No. 14-1.

Confidential, Subject to Protective Order

17.     All duties, charges, and exactions assessed as a result of the liquidation of the actions challenged herein have been paid.

## STATEMENT OF FACTS

**Import entries by Optima of hot-rolled steel from Japan produced by Tokyo Steel and exported by [          ]**

18.     During the time period March 2016 – September 2017 Optima made 13 entries of hot-rolled steel from Japan that were subject to AD cash deposits.  *See* Exhibit 1 (copies of Optima import entry summaries). Nine of these entries are the subject of this litigation.

19.     All of the hot-rolled steel imported by Optima was sold to [          ] by Tokyo Steel and exported by [          ] to Optima.  *See* Exhibit 1 (providing invoices from [          ] to Optima).

20.     All of the hot-rolled steel imported by Optima (from [          ]) during this time period was produced by Tokyo Steel Manufacturing Co., Ltd. ("Tokyo Steel"), whose manufacturer identification (ID) number is ([                    ].  *See* Exhibit 1 (showing Box 13 of CF 7501's with the indicated manufacturer ID);  *see also* Exhibit 2 (bills of lading and Tokyo Steel mill certificates corresponding to the invoices from [          ]).

21.     Based on the entry documentation submitted to CBP, all of Optima's 13 protested entries including the 9 entries of hot-rolled steel for which the protest was

Confidential, Subject to Protective Order

denied and that are the subject to this litigation were shipped from Japan on the following
vessels and in the following quantities:

| | Vessel Name | Sailing Month | Quantity (MT) | |
|---|---|---|---|---|
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| | *TOTAL* | | [ | ] |

*See* Exhibit 1 (providing the entry summary, invoice, packing list, and certificate of
origin for each of the protested entries).

22.     Each entry was comprised of merchandise produced by Tokyo Steel that
was subject to the AD order.  *See id.*; *see also* Exhibit 2 (bills of lading and Tokyo Steel
mill certificates corresponding to the invoices from [          ]).

23.     Because Tokyo Steel did not yet have (at the time the entries subject to the
challenged protest were entered) its own AD cash deposit rate, Optima deposited
estimated duties at the AD cash deposit applicable to "all others" as set forth in the
USDOC's AD cash deposit instructions dated July 9, 2019.  Such AD deposit rate was
10.24% starting from USDOC's preliminary determination until the final determination
in the underlying investigation at which time the rate was revised to 5.58%.  *See* Exhibit

Confidential, Subject to Protective Order

3 (USDOC's cash deposit instruction following the preliminary determination); *see also*

Exhibit 4 (USDOC's cash deposit instruction following AD order); Exhibit 1 (Optima's

CF 7501s detailing payment of "ADA" (AD cash deposits) commensurate with the

relevant deposit rate).

**USDOC's AD Review of Tokyo Steel and Establishment of Company-specific AD rate for Tokyo Steel**

*Initiation of USDOC AD Review, Issuance of AD Questionnaire To Tokyo Steel and Tokyo Steel AD Questionnaire Responses*

24.     On December 7, 2017 the USDOC initiated its AD review for the AD

order hot-rolled steel from Japan for the review period March 22, 2016 to September 30,

2017.  *See Initiation of Antidumping and Countervailing Duty Administrative* Reviews,

82 Fed. Reg. 57,705 (December 7, 2017).

25.     On January 16, 2018 the USDOC issued a decision memorandum that

selected Tokyo Steel,  and another Japanese steel producer, Nippon Steel & Sumitomo

Metal Corporation to be "mandatory respondents" for the USDOC's POR1 AD review

for hot-rolled steel from Japan.  Accordingly, on January 19, 2018 the USDOC issued its

AD questionnaire to Tokyo Steel.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 9,

Attachment 3).

26.     the USDOC's AD questionnaire had four primary parts:  Section A

contained multiple questions about corporate organization of the mandatory respondent

and general information about the mandatory respondent's U.S. sales.  Section B

requested a complete listing of all "home market' sales of the subject merchandise

Confidential, Subject to Protective Order

detailing the invoice price to the home market customer, as well as all expenses incurred in selling and shipping the subject merchandise to home market customers.  Section C requested a complete listing of all "United States" sales of the subject merchandise detailing the invoice price to the U.S., as well as all expenses incurred in selling and shipping the subject merchandise to the U.S. customers.  And Section D requested a complete listing of the costs of production for every type of hot-rolled product sold to home market and U.S. customers.  *Id.*

27.  On February 20, 2018 Tokyo Steel submitted its response to Section A of the AD questionnaire.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 11).

28.  Of particular relevance was Tokyo Steel's response to USDOC's Section A question 3 which required that Tokyo Steel provide "detailed information about your channels of distribution {and}, the categories of customers to whom you sell."  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at Attachment 3 USDOC's AD Questionnaire at pg. 10 and 11).  Tokyo Steel provided the following information to the USDOC:

> We note that 100 percent of Tokyo Steel's sales of subject hot-rolled steel to the United States are manufactured to order. Also, Tokyo Steel does not sell from inventory in either the U.S. or home market.  Accordingly, all production of hot-rolled steel is shipped to a customer immediately after production.
>
> **U.S. Sales**
>
> Tokyo Steel's U.S. sales during the review period were made through [
>                                                                                       ]. For all sales made to this unaffiliated Japanese trading company, the unaffiliated Japanese company [                                                                                   ]
>
> . . .
>
> As indicated above, **with respect to U.S. sales**, there was [
>                         ]; namely, U.S. sales made to an unaffiliated Japanese [

Confidential, Subject to Protective Order

> ]. And, within this channel of distribution, **Tokyo Steel had [**
>                                        **].**

. . .

> Notwithstanding that [      ] percent of all US subject hot-rolled sales and a
> majority of all home market subject hot-rolled sales made by Tokyo Steel were
> sold through trading companies, Tokyo Steel knows the ultimate destination of
> the shipment. The reason is straightforward. Every sale is produced to order and
> therefore Tokyo Steel knows the identity of the actual U.S. and home market
> customer to whom the merchandise is sold.

*See* Exhibit 5 (Affidavit of Amber Jeffcoat at Attachment 4 providing relevant pages of

Tokyo Steel Section A Questionnaire Response).

29.    In addition to narrative answers to the USDOC's questions, Tokyo Steel's

Section A response provided supporting documentation as exhibits.  *See* Exhibit 5

(Affidavit of Amber Jeffcoat at para. 12).  Specifically, Exhibit A-9 provided a complete

"sales trace" for one of Tokyo Steel U.S. sales of hot-rolled steel made to [          ].  *See*

Exhibit 5 (Affidavit of Amber Jeffcoat at Attachment 5 providing Exhibit A-9).

30.    The documentation in Tokyo Steel's Exhibit A-9 makes clear that Tokyo

Steel's U.S. sales of hot-rolled steel were made to "[                         ]"  *Id.*

31.    On March 8, 2018 Tokyo Steel submitted its response to Section C of the

USDOC's AD questionnaire.  Tokyo Steel's Section C Response consisted of three

primary parts.  The most import part was the submission of a computer sales file that

provided a listing of each and every U.S. shipment of the hot-rolled steel under review by

Tokyo Steel made during the review period, March 22, 2016 – September 30, 2017

("POR 1").

Confidential, Subject to Protective Order

32.     Pursuant to the USDOC's instructions, "each and every U.S. shipment of hot-rolled steel" equaled each and every shipment by Tokyo Steel according to the date when Tokyo Steel's shipment left the factory for the port.  Or stated differently, the shipment-by-shipment listing included all those U.S. shipments the left Tokyo Steel's factory during the time period March 22, 2016 – September 30, 2017 (destined for the port to be loaded on a vessel bound for the United States.

33.     Tokyo Steel's Section C response also included a narrative portion that both provided specific answers to the USDOC's questions and detailed the contents of each field in the submitted U.S. sales computer file.  The third part of Tokyo Steel's Section C response included exhibits that provided additional supporting documentation requested by the USDOC.

34.      Of particular relevance was Tokyo Steel's response to question "field number 6.0 Customer Code"

> **FIELD NUMBER 6.0: Customer Code**
>
> FIELD NAME: CUSCODU
>
> DESCRIPTION: Report the name of the customer or the internal accounting code designating the customer, as used in your normal course of business.
>
> NARRATIVE: Provide a list of customer names and codes as an attachment to your narrative response.

**ANSWER**: Tokyo Steel has reported this field as requested. Tokyo Steel had the following U.S. customer(s) during the POR:

[                                                    ]

We have also reported in field CUSCOD3U [            ] customer. See **Exhibit C-5**.

Confidential, Subject to Protective Order

*See* Exhibit 5 (Affidavit of Amber Jeffcoat at Attachment 6 including the relevant pages of Tokyo Steel's Section C Response, including Exhibit C-5).

35.     Tokyo Steel Exhibit C-5 made clear that Tokyo Steel's internal code for [          ] was [             ] and Tokyo Steel's internal code for [           ] U.S. customer Optima, was [             ].

36.     Again, Tokyo Steel's Section C response contained a computer sales listing of every Tokyo Steel U.S. shipment of hot-rolled steel made during POR1.  Such sales listing indicated that there were a total of [        ] U.S. sales transactions.  Each sales transaction contained a number of different fields providing data and information requested by the USDOC.  Among others, such fields of the Tokyo Steel U.S. sales listing included:

| Field name | Field description |
|---|---|
|  | Product code |
|  | Primary customer |
|  | End customer |
|  | Order number |
|  | Order date |
|  | Invoice number |
|  | Invoice date |
|  | Shipment date |
|  | Vessel name |
|  | Zip code of destination |
|  | Shipment quantity (metric tons) |
|  | Shipment quantity (kgs) |

37.     Between July 11, 2018 and August 16, 2018 the USDOC issued supplemental questionnaires to Tokyo Steel seeking clarification, confirmation or

Confidential, Subject to Protective Order

additional information with respect to the data and information that Tokyo Steel had

provide as part of the AD review.

38.    Of particular relevance was the USDOC's Supplemental Section A-C

Questionnaire dated July 11, 2018 in which the USDOC asked the following question:

> 16. You use at least [
>
>             ]. What is the official name of your U.S. customer and all its affiliated
> companies that you deal with? Explain how they are related to each other and your
> interactions with them.

*See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 19).

39.    On August 1, 2018, Tokyo Steel submitted to the USDOC a certified

response that contained the following answer to the above question: "[             ] {sic}

is a shortened form, or another name for, [                   ]" *Id.; see also* Exhibit 5

(Affidavit of Amber Jeffcoat at Attachment 8 providing relevant pages from Tokyo

Steel's certified questionnaire response).

40.    This clarification response made by Tokyo Steel—in response to a specific

question by the USDOC—made crystal clear that "[             ]" was essentially a

Tokyo Steel internal nickname for [                   ]. Or stated differently, Tokyo

Steel's only customer for all of its U.S. shipments was [                   ]. *See* Exhibit

5 (Affidavit of Amber Jeffcoat at para. 21).

41.    Every computer file Tokyo Steel we submitted to the USDOC contained a

specific computer file name.  The latest version of Tokyo Steel's U.S. sales database was

called tsussales02.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 22).

Confidential, Subject to Protective Order

*The USDOC's Final AD Review Determination*

42.     On June 21, 2019, the USDOC released its final results for its AD review of Hot-Rolled Steel from Japan for the review period, March 22, 2016 – September 30, 2017.  *See Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 31,025 (June 28, 2019) and accompanying Issues and Decision Memorandum.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at Attachment 9).

43.     The USDOC's AD review final results release consisted of, among other items a calculation package detailing the specific AD margin calculation methodology employed and the databases used for the USDOC's calculation of Tokyo Steel's AD rate for POR1.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 24, Attachment 10 and 11 providing relevant pages of final calculation package).

44.     The USDOC's final results calculation package makes clear that the USDOC utilized Tokyo Steel's U.S. sales database called tsussales02 to calculate both Tokyo Steel's AD rate <u>and</u> the company-specific assessment AD rate.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 25, Attachment 12 providing relevant pages of calculation package).

**Confirmation that Sales Transactions to Optima Steel Were Included in USDOC's AD Assessment Rate Calculation for Tokyo Steel Provided to Customs.**

45.     Attachment 7 to the Affidavit of Amber Jeffcoat provides the public summary of those U.S. sales transactions that USDOC relied upon in calculating Tokyo

Confidential, Subject to Protective Order

Steel's new AD cash deposit rate of 2.06% and the company-specific assessment rate of

[                              ].  *See* Exhibit 7.  Specifically, Attachment 4 provides provided

all those U.S. sales transactions for which the CUSCODU was [            ] (indicating

[                          ] was the customer).  *Id*.

46.     A vessel-by-vessel summary of the U.S. sales transactions in Attachment

12 is set forth below.

| | Vessel Name | Sailing Month | Quantity (MT) | |
|---|---|---|---|---|
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| | *TOTAL* | | [ | ] |

*See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 27).

47.     The total quantity indicated above equals the sum of all of Tokyo Steel's

individual U.S. sales transactions that were included in the USDOC's AD rate calculation

for the 2016-2017 antidumping review.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at

para. 28).

48.     Such fact is evidenced by the fact that this total quantity ties exactly to the

specific page in the USDOC's antidumping margin calculation "output" for deriving (a)

Confidential, Subject to Protective Order

Tokyo Steel's new AD cash deposit rate of 2.06% **and** (b) the company-specific AD

assessment rate of [                              ].  *Id.*

49.    The summary calculation of Tokyo Steel's new AD cash deposit rate is

provided in the USDOC's "Final Results Margin Calculation for Tokyo Steel."  *See*

Exhibit 5 ( Affidavit of Amber Jeffcoat at Attachment 11).   As can be seen therein, the

total quantity of [                              ] was used to calculate Tokyo Steel's new AD

rate of 2.06%.

50.    And the summary calculation of the USDOC's "importer specific AD

assessment rate" is provided on in the USDOC's "Output" of its AD margin calculation

program."  *See* Exhibit 5 ( Affidavit of Amber Jeffcoat at Attachment 11).   As can be

seen therein, the total quantity of [                              ] (column B) was used to derive

the "per-unit {AD} assessment rate" of [                              ].  *Id.*

51.    The USDOC's importer specific assessment calculation page makes clear

that the USDOC calculated only a single—just one—company-specific AD assessment

rate for Tokyo Steel's hot-rolled steel AD review. *Id.*  Had the USDOC believed there

were multiple entities eligible for a company-specific assessment rate, the USDOC would

have calculated multiple company-specific assessment rates. But the USDOC did not do

so.  *See* Exhibit 5 (Affidavit of Amber Jeffcoat at para. 31).

52.    On June 19, 2019, the USDOC issued both public and non-public

liquidation instructions directing CBP to liquidate subject entries in accord with the final

Confidential, Subject to Protective Order

results.  *See* Exhibit 6 (Public Customs Instructions); Exhibit 7 (Non-Public Customs

Instructions).

53.     Paragraph 1 of the non-public instructions directed CBP to liquidate entries

from "[                                        ]" at a final rate of "[                        ]."

Exhibit 7.  Those instructions also observed that "[

]."  *Id*.

54.     In late December 2019, CBP liquidated the entries that are subject to the

instant action utilizing the cash deposit rate in effect at the time of entry.

55.     On February 18, 2020, Optima caused the protest at issue here to be filed

on its behalf contesting CBP's failure to liquidate the covered entries in accord with the

company-specific rate applicable to subject merchandise produced by Tokyo Steel and

[                ].  *See* Exhibit 8 (Original Protest).  Optima's protest was filed by Ms.

Heather Jacobson, Esq. of Junker and Nakachi in Seattle, WA.

56.     On April 2, 2020, CBP indicated via its ACE system that Optima's protest

had been denied, in part the protest, stating that "[

]."  *See* Exhibit 9 (Denial of Protest).

- 16 -

Confidential, Subject to Protective Order

57. ~~On May 4, 2020, Optima filed a request for reconsideration of the partial denial of its protest providing~~On April 29, 2020, Ms. Jacobson sent an email to CBP Supervisory Import Specialist Craig Callies to request additional information concerning the protest denial.  (A copy of this email is provided in Exhibit 10).

58. On May 1, 2020, Ms. Jacobson talked by telephone with Craig Callies. During this conversation, Mr. Callies stated that he was not directly familiar with the basis for denial but believed that the issue needed to be re-reviewed, and that Optima would need to file a Void Denial request so that CBP could reconsider the issue and consult with Commerce as to the meaning of the liquidation instructions.

~~57.~~59. On May 4, 2020, Ms. Jacobson filed a Void Denial request as discussed with Mr. Callies. *See* Exhibit 11 (Request for Reconsideration).  In support of the Void Denial request, Ms. Jacobson provided additional information demonstrating that the covered entries were eligible for the company-specific rate in paragraph 1 of the non-public instructions.  *See* ~~Exhibit 10 (Request for Reconsideration).~~

60. On May 5, 2020 CBP's ACE system indicated that Optima's Void Denial request had been denied.  Accordingly, that same day, Ms. Jacobson sent a detailed email to Craig Callies (with a cc to the Director and Assistant Directors of the Center) that documented the substance of the May 1st telephone conference and that also objected to the summary denial of void denial request. (A copy of the email is provided in Exhibit 12).

- 17 -

Confidential, Subject to Protective Order

61.    Later that same day (May 5th), the CBP ACE system indicated that Optima's protest was "SUSPENDED."

58.62. On October 16, 2020, CBP denied ~~the request for reconsideration~~Optima's protest, in part, stating that "[

]". *See* Exhibit 11 (Denial of Reconsideration); *see also* Exhibit 14 (ACE Summary Printout).

## STATEMENT OF CLAIMS

59.63. In the following respects, and for other reasons apparent from the factual information presented to CBP and included in the instant complaint CBP's liquidation of the entries at issue here was erroneous and its denial of Optima's protest was in error.

**Count 1:    CBP Erroneously Liquidated Optima's Entries that Were Produced by Tokyo Steel, sold to [            ], and Imported by Optima**

60.64. Optima reasserts and incorporates by reference paragraphs 1-~~59~~63.

61.65. The imports covered by this protest were eligible for the company-specific rate identified in paragraph 1 of the USDOC's non-public instruction.

62.66. CBP incorrectly liquidated Optima's covered entries at the cash deposit rate applicable at entry and not the company-specific rate identified in paragraph 1 of the non-public instructions for which they were eligible.

**Count 2:**      **CBP Denied Optima's Protest Despite Evidence Demonstrating its Position was in Error**

63.67. Optima reasserts and incorporates by reference paragraphs 1-6266.

64.68. Optima's protest and request for reconsideration demonstrated to CBP that its basis for liquidating the covered entries at the cash deposit rate at the time of entry was in error.

65.69. CBP denied Optima's protest and its request for reconsideration despite evidence demonstrating that its basis for denying the protest was affirmatively wrong.

Confidential, Subject to Protective Order

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Optima prays that this Court enter judgment as follows:

    (A)    Enter judgment in favor of Optima;

    (B)    Hold CBP's denial of Optima's protest invalid;

    (C)    Direct CBP to re-liquidate the entries covered by this action in accord with the rate identified in the non-public instructions;

    (D)    Direct CBP to refund any excess payments made by Optima with the appropriate interest; and

    (E)    Grant Optima such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James C. Beaty

**Curtis Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-7373

~~March 8~~June 4, 2021        *Counsel for Optima Steel International LLC*

**EXHIBIT LIST**

| Number | Description |
|---|---|
| Exhibit 1 | Entry Summaries |
| Exhibit 2 | Bills of Lading, Invoices, and Associated Mill Test Certificates |
| Exhibit 3 | INV Preliminary Cash Deposit Instructions |
| Exhibit 4 | INV Final Cash Deposit Instructions |
| Exhibit 5 | Affidavit of Amber Jeffcoat |
| Exhibit 6 | POR 1 Public Cash ~~Desposit~~Deposit Instructions |
| Exhibit 7 | POR 1 Non-public Liquidation Instructions |
| Exhibit 8 | Protest |
| Exhibit 9 | CBP Protest Denial |
| Exhibit 10 | Email with CBP |
| Exhibit ~~10~~11 | Request for Reconsideration |
| Exhibit 12 | Email with CBP |
| Exhibit ~~11~~13 | Denial of Request for Reconsideration |
| Exhibit 14 | ACE Printout |

# EXHIBIT 10

**NOT CAPABLE OF SUMMARY**

# EXHIBIT 11

**NOT CAPABLE OF SUMMARY**

# EXHIBIT 12

**NOT CAPABLE OF SUMMARY**

# EXHIBIT 13

**NOT CAPABLE OF SUMMARY**

# EXHIBIT 14

**NOT CAPABLE OF SUMMARY**